1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6  MARIO ARRIAGA,

7                                Plaintiff,

8         v.

9  CAROLYN W. COLVIN, Acting
   Commissioner of Social Security, [1]

10

11                         Defendant.

Case No. 3:13-cv-05089-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12

13        Plaintiff has brought this matter for judicial review of defendant's denial of his

14  application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

15  Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

16  by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

17  record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

18  benefits should be reversed and that this matter should be remanded for further administrative

19  proceedings.

20                       FACTUAL AND PROCEDURAL HISTORY

21

22        On April 12, 2010, plaintiff filed an application for disability benefits, alleging disability

23  as of December 5, 2005.  See ECF #7, Administrative Record ("AR") 18.  That application was

24  denied upon initial administrative review on June 21, 2010, and on reconsideration on July 29,

25

26  [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
    Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
    Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
    docket accordingly.**

ORDER - 1

2010. See id.  A hearing was held before an administrative law judge ("ALJ") on February 7, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 35-72.

In a decision dated February 15, 2012, the ALJ determined plaintiff to be not disabled. See AR 18-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 5, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981.  On February 8, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1.  The administrative record was filed with the Court on April 15, 2013. See ECF #7-#8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed because the ALJ erred: (1) in not recognizing all of plaintiff's severe impairments; (2) in finding her impairments  did not meet or medically equal the criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04; (3) in evaluating the medical opinion evidence in the record, including that from Justin J. Sherfey, D.O., regarding plaintiff's ability to grasp and manipulate and from Clyde T. Carpenter, M.D., regarding his ability to lift; and (4) in assessing plaintiff's residual functional capacity.  For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Drs. Sherfey and Carpenter, and therefore in assessing plaintiff's residual functional capacity.  Also for the reasons set forth below, the Court finds defendant's decision to deny benefits should be reversed and this matter should be remanded for an award of benefits on that basis.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to perform light work. See AR 22.  The ALJ also found that plaintiff could not climb ladders, ropes or scaffolds, that he could balance frequently, and that he could occasionally kneel, crawl, crouch, and stoop. See id.  In addition, the ALJ determined that plaintiff could occasionally reach overhead with his right upper extremity, and that he could perform both simple and some known complex tasks, as

ORDER - 4

well as some detailed tasks. See id.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

ORDER - 5

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues that in assessing the above RFC, the ALJ failed to take into account Dr. Sherfey's April 5, 2007 opinion that he could not perform more than occasional grasping and manipulating. See ECF #11, pp. 10-11 (citing AR 439).  As pointed out by defendant, though, that opinion was provided not by Dr. Sherfey, but by William W. Linnenkohl, MPT. See id. However, plaintiff also cites AR 440, a form dated September 17, 2007, in which Dr. Sherfey agreed plaintiff could perform the job of cashier with the "[l]imitations per PCE [physical capacities evaluation]."  This PCE appears to be the one performed by Mr. Linnenkohl in early April and early May 2007, in which plaintiff was found to be capable of performing only occasional fine manipulation in his right hand. See AR 336.  Indeed, back in late April 2007, Dr. Sherfey indicated he concurred with that PCE in another form he completed. See AR 1072.

ORDER - 6

But while the ALJ acknowledges the fact that Dr. Sherfey agreed with the conclusions of the PCE performed by Mr. Linnenkohl, she did not explain why she declined to include in her assessment of plaintiff's residual functional capacity all of the limitations indicated thereby as Dr. Sherfey appears to have done, including the limitation to occasional fine manipulation in the right hand. To that extent then the ALJ erred. On the other hand, given that Dr. Sherfey made no mention of the April 5, 2007 form in which Mr. Linnenkohl opined that plaintiff was limited to occasional grasping *and* manipulation, there was no error on the part of the ALJ in that regard with respect her evaluation of the medical opinion evidence from Dr. Sherfey.[3]

Plaintiff also argues the ALJ's determination that he is capable of performing light work is inconsistent with the lifting limitations found by Dr. Carpenter, and the ALJ erred in failing to take account of those limitations in assessing the above RFC. The Court agrees. Dr. Carpenter opined in late June 2008, that plaintiff could lift no amount of weight frequently and only five pounds occasionally. See AR 594. In addition, as pointed out by plaintiff, the early April and early May PCE completed by Mr. Linnenkohl also limits him to lifting zero pounds frequently. See AR 334, 336. There is no indication, however, that the ALJ considered these opinions, despite the fact that light work requires lifting up to 20 pounds at a time and up to 10 pounds frequently. See 20 C.F.R. § 404.1567(b). Thus, on this basis as well it is far from clear that the ALJ's RFC assessment accurately describes all of plaintiff's limitations.

---

[3] To the extent plaintiff is arguing the ALJ should have taken account of the limitation to occasional grasping and manipulation assessed in the April 5, 2007 form regardless of who the opinion source was, the Court declines to find any specific error at this time. This is because that limitation conflicts not only with Mr. Linnenkohl's opinion that in terms of grasping and manipulation plaintiff was limited only to occasional fine manipulation in his right hand, but also with Mr. Linnenkohl's additional assessments in early and late August 2007, indicating no limitations in regard to grasping and the ability to perform frequent fine manipulation. See AR 342, 369. Given that this matter is being remanded in part for the ALJ's failure to properly address Dr. Serfey's apparent adoption of the occasional limitation on fine manipulation noted in Mr. Linnenkohl's PCE, however, re-consideration of both plaintiff's ability to grasp and his ability to perform fine manipulation in light of the conflicts in the evidence just noted is appropriate.

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's ability to grasp, manipulate and lift – and therefore in regard to his residual functional capacity and capability of performing other jobs existing in significant numbers in the national economy[4] – remand for further consideration of those issues, rather than an outright award of benefits, is appropriate.

---

[4] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v.

ORDER - 8

1

2                                        CONCLUSION

3         Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded

4    plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is REVERSED

5    and this matter is REMANDED for further administrative proceedings in accordance with the

6    findings contained herein.

7         DATED this 13th day of December, 2013.

8

9

10

11

12                                        Karen L. Strombom
                                          United States Magistrate Judge
13

14

15

16

17

18

19

20

21   _____

22   Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The
     vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial
23   evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the
     claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).
24         At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the
     same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 66-67.
25   In response to that question, the vocational expert testified that an individual with those limitations would be able to
     perform other jobs. See AR 68.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be
26   capable of performing other jobs existing in significant numbers in the national economy. See AR 27-28.  But
     because as discussed above the ALJ's assessment of plaintiff's RFC cannot be said at this time to accurately
     describe all of plaintiff's limitations, it also cannot be said at this time that the vocational expert testimony upon
     which the ALJ relied to find plaintiff capable of performing other jobs existing in significant numbers and therefore
     not disabled is wholly accurate.

     ORDER - 9